IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CV-624-FL

| | |
|---|---|
| PAMELA TAYLOR SHAW, )<br>)<br>          Plaintiff, )<br>)<br>  v. )<br>)<br>STATE OF NORTH CAROLINA, NORTH )<br>CAROLINA DEPARTMENT OF )<br>TRANSPORTATION, ERIC BOYETTE in )<br>his individual capacity, EBONY PITTMAN )<br>in her individual capacity, AMANDA )<br>OLIVE in her individual capacity, and )<br>TUNYA SMITH in her individual capacity, )<br>)<br>          Defendants. ) | ORDER |

This matter is before the court upon defendants' motions to dismiss for lack of subject matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (DE 14, 16). The motions have been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, defendants' motions are granted in part and denied in part.

**STATEMENT OF THE CASE**

Plaintiff began this employment discrimination and constitutional tort suit by filing complaint in this court October 30, 2023. Plaintiff presents claims for violation of the Equal Pay Act ("EPA"), sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and retaliation in violation of the EPA and Title VII against the State of North Carolina (the

"state") and the North Carolina Department of Transportation ("NCDOT") (together, the "state defendants").

Plaintiff also sues defendants Eric Boyette ("Boyette"), Ebony Pittman ("Pittman"), Amanda Olive ("Olive"), and Tunya Smith ("Smith") (collectively, the "individual defendants") for violation of her rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution. Plaintiff seeks backpay, reinstatement or alternatively front-pay, liquidated and compensatory damages, and costs and fees.

The state defendants filed the instant motion to dismiss plaintiff's claims against them November 21, 2023, relying upon two documents from the underlying administrative proceedings. The individual defendants moved to dismiss plaintiff's claims against them the same day.

## STATEMENT OF FACTS

The facts alleged in the complaint are as follows. Defendants hired plaintiff November 2, 2019 as an "Agency HR Manager" to work in NCDOT's Office of Civil Rights ("OCR") as head of the Equal Employment Opportunity Office ("EEOO"). (Compl. (DE 1) ¶¶ 12–13). Defendants set plaintiff's salary by assigning a grade based on experience, qualifications, and expertise. (Id. ¶ 14). Plaintiff alleges that she performed comparable work with the same duties and responsibilities as three male human resources employees: 1) John Eley ("Eley"), an "Agency HR Manager II (GN15)," who earned $101,615 per year; 2) Thomas Bridges, an "Agency HR Manager II (GN15)," who earned $96,439 per year, and 3) Paul Boyles ("Boyles"), an "Agency HR Manager II (GN15)," who earned $96,439 per year. (See id. ¶¶ 17–20). Plaintiff, head of the EEOO section, earned $87,125 per year. (Id. ¶ 21).

On October 13, 2021, defendant Smith submitted a memorandum requesting a salary increase for plaintiff, on grounds that "the [EEOO] Manager is a subject matter expert in her

2

field[,]" and to "establish equitable salary relationships amongst the OCR management staff." (Id. ¶ 22). This memorandum listed the salaries of other "OCR management staff," including: 1) Lisa Wilson ("Wilson"), a "Program Manager I (GN15) [and] manager of the BOWD section," who earned $86,824 per year; 2) Mark Whisenant ("Whisenant"), "Title VI/ADA Manager, in a Program Manager I (GN15) position," who earned $94,087 per year; 3) Benny Sloan, "Utilization/Compliance/DE Manager, in a program Manager I (GN15) position," who earned $94,087 per year, and 4) Timothy Moore ("Moore"), "OJT Manager, in a Program Manager I (GN15) position," who earned $91,792 per year. (Compl. ¶¶ 23–27). Defendants Smith and Olive allegedly recognized that plaintiff's duties were similar to Whisenant and Moore's, because they requested a salary increase for plaintiff up to $94,087 per year, and plaintiff's reclassification to "Human Resources Manager I." (See id. ¶¶ 28, 32).

The Office of State Human Resources ("human resources office") responded to Smith's request November 24, 2021. (Id. ¶ 32). The response stated that the office had reviewed the request, the staff description for the positions supervised by plaintiff, information provided in a November 17, 2021 meeting, comparable positions included in the "agency analyst notes," position descriptions for the current staff and three proposed human resources consultants, the "Human Resources Manager Plaintiff and II positions in DOT" and the "Program Manager Plaintiff" positions in the OCR. (See id. ¶ 33).

The human resources office denied Smith and plaintiff's request on grounds that 1) the comparable positions were more complex, with broader supervisory responsibilities and higher level classifications; 2) the "DPS Human Resources Manager II over provides services for approximately 23,000 state employees"; and 3) no changes in the position were identified. (Id. ¶

3

35).  The response also recommended re-submission of the request once new positions were added for plaintiff to supervise.  (See id. ¶ 36).

At the time of the request, plaintiff supervised four employees; Moore supervised two, Whisenant supervised four, Eley supervised none, and Boyles supervised four.  (See id. ¶¶ 37–41). NCDOT, Olive, and Smith made no efforts to submit any additional information to the state office to rebut its conclusions.  (Id. ¶ 42).

After learning of the denial of her request, plaintiff began to complain, which created "enmity" between her and Smith.  (Id. ¶ 45).  On January 25, 2022, Smith instructed plaintiff to issue formal discipline to another employee, Veronica Patterson ("Patterson"), for performance that had occurred while Patterson was under Smith's supervision.  (Id. ¶ 48).  Plaintiff believed this order violated state human resources policies, and refused.

On February 4, 2022, plaintiff learned that Wilson, who was supervised by an employee who answered to Smith, had been overheard making "derogatory statements about black males," and that these allegations had not been referred to the EEOO for investigation.  (Id. ¶ 53).  The same day, Smith and plaintiff met with defendant Pittman, to whom Smith reported.  At this meeting, Smith voiced concerns that OCR employees were lodging complaints about Smith with the EEOO team; plaintiff did not deny this.  (See id. ¶¶ 57–58).

On February 5, 2022, Plaintiff submitted another memorandum requesting a reclassification of her position, and an accompanying salary increase.  (See id. ¶ 59).  EEOO was the only unit that did not receive increases for its employees during that legislative session's budget process.  (Id. ¶ 69).

On February 8, 2022, Smith called plaintiff about Patterson; Smith again asked plaintiff to issue written discipline to Patterson, and was "hostile" on the phone call.  (Id. ¶ 61).  Plaintiff again

4

refused to issue discipline. (Id. ¶ 62). The same day, Eley called plaintiff stating that Olive, the "HR Director" wanted a copy of an unspecified EEOO policy. (Id. ¶ 63). Plaintiff unsuccessfully contacted Smith, then reached out to defendant Pittman about the request. (Id. ¶ 64). Smith then called plaintiff "furious and yelling" that plaintiff had called Pittman instead of waiting to hear from her, and accused plaintiff of not following protocol. (Id. ¶ 65).

Smith contacted plaintiff March 14, 2022, "upset" that plaintiff's section had produced a report without Smith having read or vetted it. (See id. ¶¶ 113–14). Plaintiff confirmed with Whisenant that plaintiff had not acted improperly. (See id. ¶ 115).

On April 21, 2022, plaintiff received an email from David Swalnick ("Swalnick"), about an investigation he was conducting on allegations against plaintiff. (Id. ¶ 124). Swalnick stated that Smith, Pittman, and two other employees had made these allegations. (See id. ¶ 127). Plaintiff and Smith came back into contact, and plaintiff reminded Smith that Smith had declined to investigate another employee's emotional outburst in March 2022 against plaintiff. (Id. ¶ 130). Smith responded by "talking loudly and interrupting" plaintiff, and saying plaintiff was "out of line" for asking Swalnick questions about the investigations. (Id. ¶ 131). Plaintiff attempted to leave her office but Smith followed her into the hallway, stating "Pam, you are standing in front of me, staring plaintiff [sic] down, and I'm going to call security," and that plaintiff was "intimidating" her and "should leave"; finally, Smith called security. (See id. ¶¶ 132–34). Later that day, Smith called another employee into her office, appointed him as new EEOO manager, and deactivated plaintiff's badge and IT account. (Id. ¶ 137).

Plaintiff was told to report directly to Pittman while this incident was under investigation. (Id. ¶ 142). Plaintiff provided her own version of the incident, under which Smith had followed

5

plaintiff out of the building while making "perplex[ing]" statements about intimidation. (See id. ¶ 143(e)–(j)). Plaintiff denied threatening or intimidating Smith. (Id. ¶ 143(l)).

Plaintiff was placed on investigatory leave from April 27, 2022 to May 26, 2022, at which time she returned to work reporting directly to Pittman. (Id. ¶ 145) Plaintiff was not provided any work, and no discipline was taken against Smith or other employees involved in the April 21 incident. (Id. ¶ 149). Plaintiff was never provided any notice or opportunity to be heard as to the allegations against her, her reassignment to Pittman's supervision, or her removal from position as EEOO director. (Id. ¶ 150). Plaintiff was never returned to the EEOO, and decided she had no choice but to retire. (Id. ¶ 151).

## COURT'S DISCUSSION

A.   Standard of Review

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Bain, 697 F.2d at 1219. Where a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts " the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).[1]

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

---

1   Internal citations and quotation marks are omitted from all citations unless otherwise specified.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[2] "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.   Analysis

The state defendants move for dismissal on grounds that the state is not a proper party, and that plaintiff fails to adequately plead her EPA and Title VII claims against them. The individual defendants move separately to dismiss plaintiff's § 1983 claims against them on the basis of insufficient factual support or, alternatively, on grounds of qualified immunity. The court addresses the motions sequentially.

1.   State Defendants' Motion

The state defendants argue that the state is not a proper party to this action, and that plaintiff fails to plead sufficient facts to support her claims against NCDOT. The court disagrees with the first contention, but agrees with the second in part.

a.   State as Party

The state defendants argue that plaintiff's claims against the state are duplicative of her claims against NCDOT, and should be dismissed on that basis. (See State Defs' Br. (DE 15) 8–9). The court disagrees.

---

[2]   Throughout this order, internal quotation marks and citations are omitted unless otherwise specified.

7

Case 5:23-cv-00624-FL   Document 29   Filed 03/25/24   Page 7 of 20

Specifically, the state defendants argue that the state was not plaintiff's employer, as required for liability under either Title VII or the EPA. (See id.). However, plaintiff pleads that she was a state employee assigned to NCDOT's OCR. (See Compl. ¶ 13). A Title VII plaintiff may have more than one employer, and employer status should be construed liberally to effectuate Title VII's remedial purposes. See Butler v. Drive Automotive Indus. of Am., Inc., 793 F.3d 404, 409–10 (4th Cir. 2015). A nine-factor balancing test governs whether entities are joint employees, see id. at 414, on which state defendants offer no argument. (See State Defs' Br. 8–9).[3]

Defendants instead argue that the claims are duplicative because they seek to hold the state and NCDOT liable for the same conduct. (State Defs' Br. 8–9). But, as plaintiff points out, NCDOT actually recommended that plaintiff's salary be increased, which the state refused; these claims therefore do not rest on the same conduct and are not duplicative. (See Pl's Br. State Defs (DE 27) 6). Further, plaintiff pleads that she was an employee of both the state and NCDOT. (Compl. ¶¶ 8, 13–1). Given the liberal construction of employer status, see Butler, 793 F.3d at 409–10, these allegations are sufficient to plead joint employer status, particularly where the state defendants make no arguments under Butler.

The court therefore concludes that this threshold challenge to plaintiff's claims does not succeed. Accordingly, that part of the state defendants' motion to dismiss for lack of jurisdiction is denied.

---

[3] The Fourth Circuit has not expressly applied Butler to the EPA, but that case's logic suggests that its test is also applicable to the EPA; in addition, other federal courts of appeal have, at least implicitly, applied their respective joint employer tests to EPA claims. See, e.g., Peppers v. Cobb Cnty., Ga., 835 F.3d 1289, 1298–1301 (11th Cir. 2016). The court will therefore assume without deciding that Butler governs EPA claims.

b.      EPA and Title VII Wage Claims

The state defendants move to dismiss plaintiff's EPA and Title VII wage claims because, among other reasons, plaintiff's complaint fails to adequately identify appropriate comparators as required. (State Defs' Br. 11–13). The court agrees with this particular point.

As a threshold matter, plaintiff points out, correctly, that she need not establish the elements of a McDonnell Douglas prima facie case to meet pleading standards, (Pl's Br. State Defs 10–11); however, she must still plead facts satisfying the elements of the cause of action created by the EPA, in compliance with Iqbal. See Woods v. City of Greensboro, 855 F.3d 639, 647–48 (4th Cir. 2017).

The EPA prohibits wage discrimination on the basis of sex for equal work requiring equal skill, effort, and responsibility, performed under similar working conditions. 29 U.S.C. § 206(d)(1). Plaintiff need not plead a prima facie case as set out in Spencer v. Va. State Univ., 919 F.3d 199, 203 (4th Cir. 2019). But under the plain terms of the statute, and as she recognizes in her brief, she therefore still must identify comparators of the opposite sex who performed equal work under similar conditions, who were paid more. (See Pl's Br. State Defs 8); 29 U.S.C. § 206(d)(1).

Plaintiff fails to do so. The United States Court of Appeals for the Fourth Circuit has cautioned that congress's choice of the word "equal" in the EPA shows that jobs must be "virtually identical," and that jobs are not necessarily equal even if they require the same general duties and have the same title. Wheatley v. Wicomico Cnty., Md., 390 F.3d 328, 333 (4th Cir. 2004).

Plaintiff's complaint merely lists various other employees' names, titles, salaries, and number of employees supervised, while asserting in conclusory fashion that they and plaintiff performed equal work. (See Compl. ¶¶ 17–21, 24–27, 37–41). Plaintiff argues that these named

9

employees' work characteristics support her allegations alone, but she does not plead whether any or all of these employees were included in her salary increase request, or if the state office made its decision on any, all, or some combination of them. (Pl's Br. State Defs 8–9; Compl. ¶¶ 33, 35–36).

At bottom, plaintiff asserts that she performed equal work because her complaint uses those magic words, and provides titles and lists which subordinates other employees supervised. While the latter allegations create a closer question in the court's view than the former, they do not allege what any of these employees or plaintiff did, speak to qualifications or duties at all, or illuminate whether any of the relevant employees engaged in comparable work; instead, they merely recount respective numbers of subordinates without any further factual support. Indeed, that some named employees had different titles than plaintiff suggests dissimilar work. (See Compl. ¶¶ 24–27). This is insufficient to state a plausible claim under the EPA. See Wheatley, 390 F.3d at 333

Plaintiff points out that courts have recognized the burdens for this claim are not onerous. See, e.g., Reardon v. Herring, 191 F. Supp. 3d 529, 548 (E.D. Va. 2016) (collecting cases in which plaintiffs successfully pleaded EPA claims on relatively general allegations, but which had more content than those here). But plaintiff's failure to adequately identify any comparators dooms her claim under the text of the EPA, even at this stage. See Wheatley, 390 F.3d at 333 (declining to find positions equal on basis of titles and "routine duties").

Next, plaintiff offers little argument on her Title VII wage discrimination claim, other than to contend that this claim should survive because she has adequately alleged higher-paid male comparators. (See Pl's Br. State Defs 10). But the court has determined that plaintiff has not identified male comparators who were paid more. The court therefore concludes that plaintiff has not plausibly pleaded that any salary differential was due to sex, as Title VII requires. See 42

U.S.C. § 2000e-2(a); McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585–86 (4th Cir. 2015). This argument cannot save her parallel Title VII claim.

The court therefore dismisses plaintiff's EPA and Title VII wage discrimination claims, for failure to state a claim upon which relief can be granted. The state defendants' motion to dismiss accordingly is granted in this part on this basis.

   c.  Title VII and EPA Retaliation

Plaintiff pleads retaliation under Title VII and the EPA, on the basis of her demotion and allegedly forced resignation, and that defendants created a hostile work environment as a retaliatory measure. The court concludes that plaintiff's claims under the former theory may proceed, but that her hostile work environment theory must be dismissed.

To state a claim for retaliation under Title VII or the EPA, a plaintiff must show that 1) she engaged in protected activity; 2) her employer took adverse action; and 3) a causal relation exists between the protected activity and the adverse employment action. See Noonan v. Consol. Shoe Co., Inc., 84 F.4th 566, 574 (4th Cir. 2023).

Plaintiff characterizes her repeated requests for salary increases as protected activity, and state defendants do not advance any argument on the first element, so the court focuses instead on the latter two. (See State Defs' Br. 15; Pl's Br. State Defs 13).

Showing causation, even on the basis of temporal proximity alone, is not an onerous burden at the pleading stage. See Strothers v. City of Laurel, Md., 895 F.3d 317, 335–36 (4th Cir. 2018). Plaintiff adequately pleads causation at this stage because her alleged protected activity occurred in January and February, 2022. (See Pl's Br. State Defs 13; Compl. ¶¶ 45, 59). Plaintiff then pleads that she was subjected to a retaliatory hostile work environment beginning in February, 2022 through April, 2022, then demoted and forced into retirement in April, 2022. (See Pl's Br.

State Defs 12; Compl. ¶¶ 50, 72, 84, 124–135, 151). This timeline sufficiently alleges the causation element at the pleadings stage. See King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (holding ten-week gap sufficient to support causation, even alone).

Viability of this claim therefore depends on whether plaintiff has adequately alleged an adverse employment action. Plaintiff points to three adverse actions: 1) her removal from her position as EEOO head; 2) her allegedly forced retirement; and 3) that defendants created a retaliatory hostile work environment. The court examines each in turn.

First, the removal of plaintiff's job title as head of the EEOO and allegedly forced retirement unquestionably constituted an adverse employment action. (Compl. ¶¶ 141–42); e.g., Boone v. Goldin, 178 F.3d 253, 256–57 (4th Cir. 1999); Gaines v. Baltimore Police Dep't, 657 F. Supp. 3d 708, 737 (D. Md. 2023). State defendants argue that plaintiff's retirement was voluntary because she had already planned to retire in July, 2022 but plaintiff alleges that she was forced to retire early. (See Compl. ¶¶ 148–51). The court therefore rejects this argument because it asks the court to draw inferences against plaintiff at the pleading stage. Plaintiff's retaliation claims therefore survive as they rest upon these adverse actions.

However, plaintiff does not adequately plead a hostile work environment. Creating a hostile work environment can constitute an adverse action under a retaliation claim. See Von Gunten v. Maryland, 243 F.3d 848, 869–70 (4th Cir. 2001), overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006); Fordyce v. Prince George's Cnty., Md., 43 F. Supp. 3d 537, 552 (D. Md. 2014).

In turn, to plead a hostile work environment, plaintiff must show that harassment was 1) unwelcome; 2) based on a protected characteristic, here sex; 3) sufficiently severe or pervasive to alter the conditions of employment; and 4) imputable to the employer. EEOC v. Sunbelt Rentals,

Inc., 521 F.3d 306, 313 (4th Cir. 2008).  The third element requires that the plaintiff subjectively perceive the conduct as hostile or abusive, and that a reasonable person in the plaintiff's position would have perceived it as such.  Id. at 315.  The objective prong of this test is a "high bar"; Title VII does not establish a "general civility code for the American workplace," and does not reach mere "rude treatment by coworkers," "callous behavior by one's superiors," or "routine difference[s] of opinion and personality conflict[s] with one's supervisor[.]"  Id. at 315–16.

State defendants argue that Smith's conduct does not meet this high bar.  (See State Defs' Br. 15) ("Smith only reprimanded [p]laintiff verbally for a variety of workplace failings").  The court agrees.

First, plaintiff does plead that she subjectively perceived Smith's actions in Spring 2022 to be abusive.  (See Compl. ¶¶ 84, 140).  But the pleaded conduct does not rise to the level of objective abuse.

Plaintiff catalogues at great length personality conflicts, jealousies, and office politicking before April, 2022.  (See Compl. ¶¶ 46–123).  But these incidents involved merely "rude treatment by coworkers," which does not suffice; for example, plaintiff points to Smith "irate[ly] questioning" one of plaintiff's decisions (Compl. ¶ 72), conflicts over issuing discipline to third parties (id. ¶¶ 83–84), and that Smith contacted plaintiff another time "upset" about one of plaintiff's decisions (id. ¶ 113).  These allegations might involve rude or unpleasant conduct, but this showing is not sufficient.  See, e.g., Baqir v. Principi, 434 F.3d 733, 746–47 (4th Cir. 2006) (similar allegations did not suffice); Faulkenberry v. U.S. Dep't of Defense, 670 F. Supp. 3d 234, 255 (D. Md. 2023) (same); Bouknight v. S.C. Dep't of Corrs., 487 F. Supp. 3d 449, 475–76 (D.S.C. 2020) (same); cf. Sunbelt Rentals, Inc., 521 F.3d at 317–38 (holding that "extensive" harassment and frequent use of grossly offensive epithets in workplace met objectively hostile standard).  Nor

13

does the April 21 incident, in which Smith allegedly shouted at plaintiff as she exited the building, meet this standard. (Compl. ¶¶ 124–35); see, e.g., Buchhagen v. ICF Int'l, Inc., 545 F. App'x 217, 219 (4th Cir. 2013) (holding that shouting at plaintiff during two meetings did not suffice, even combined with other conduct); Faulkenberry, 670 F. Supp. 3d at 255 (having security escort plaintiff from building did not suffice, even combined with numerous other actions). Plaintiff therefore fails to establish the severe or pervasive element of her hostile work environment claim, and her retaliation claims may not proceed under this theory.

In sum, plaintiff's EPA and Title VII wage claims must be dismissed. Plaintiff's EPA and Title VII retaliation claims may proceed, but only insofar as they are based on plaintiff's theory that removal from her position and early retirement constituted the necessary adverse employment actions. These claims may not proceed insofar as they rest upon state defendants' alleged creation of a retaliatory hostile work environment.

  2. Individual Defendants' Motion

Plaintiff presents claims under the First Amendment, the Due Process Clause, and the Equal Protection Clause, against all four individual defendants. (See Compl. ¶¶ 187–99). Individual defendants argue that the claims against Pittman, Olive, and Boyette should be dismissed for failure to plead facts supporting supervisory liability under § 1983. Further, Smith argues that plaintiff's claims against her are inadequately pleaded and fail on the merits. The court agrees.

   a. Supervisory Liability

Plaintiff presents all her § 1983 claims against Pittman, Olive, and Boyette under the framework of supervisory liability. Although she never uses that term in her papers, she suggests she bases her claims against these three defendants on their knowledge of Smith's alleged

14

misconduct and failure to intervene. (See Pl's Br. 9–13). The court therefore agrees with defendants that plaintiff attempts to assert these claims on the basis of supervisory liability.

Supervisory liability under § 1983 requires that 1) the supervisor had actual or constructive knowledge that a "subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; 2) the supervisor's response to that knowledge was so inadequate as to demonstrate deliberate indifference or tacit authorization of the alleged practices; and 3) there was an "affirmative causal link" between the inaction and particular injury. Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014). The first element requires the alleged conduct to have been widespread, or "at least" to have occurred on several different occasions and to pose an unreasonable risk of constitutional injury. See id. at 227 (noting lack of evidence that defendants had engaged in similar misconduct in past against others).

Plaintiff fails to satisfy the first element here. Plaintiff's arguments rest entirely on her assertions that Pittman, Olive, and Boyette had actual knowledge of Smith's activities. (See Pl's Br. 8–13). But this knowledge of alleged misconduct directed against plaintiff is insufficient; plaintiff must also allege that the conduct was widespread and at least occurred on several different occasions, beyond the circumstances of the present case. Wilkins, 751 F.3d at 226–27; e.g., Armstrong v. City of Greensboro, 190 F. Supp. 3d 450, 467–68 (M.D.N.C. 2016); Weigle v. Pifer, 139 F. Supp. 3d 760, 793–94 (S.D.W. Va. 2015) (discussing allegations from numerous sources about multiple incidents involving particular police officer); cf. Johnson v. McCowan, 549 F. Supp. 3d 469, 479 (W.D. Va. 2021) (permitting supervisory liability claim to proceed when plaintiff alleged widespread pattern of identical abuses). Because plaintiff's claims against Pittman, Olive, and Boyette rest entirely upon these officials' alleged knowledge of Smith's activities in this case, plaintiff's supervisory liability claims cannot survive.

15

b. Smith

i. Equal Protection

Plaintiff presents an equal protection claim against all four individual defendants. To plead an equal protection claim, a plaintiff must first demonstrate that she has been treated differently from others with whom she is similarly situated, and that the unequal treatment was the result of intentional discrimination. Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Only once this showing is made does the court evaluate the claim under the appropriate level of scrutiny. Id. Plaintiff has failed to show different treatment from any similarly situated person, for the reasons discussed above. Her Equal Protection Clause claim therefore fails.

ii. First Amendment

Defendants' only argument against plaintiff's First Amendment Retaliation claim is that plaintiff did not engage in protected speech. The court agrees.

When a government employee claims that she was disciplined because of speech, courts use a three prong test to determine if the discipline violated the employee's First Amendment rights: 1) whether the employee was speaking as a citizen on a matter of public concern or as an employee on a matter of personal interest; 2) whether the employee's interest outweighs the government employer's interest; and 3) whether the speech caused the disciplinary action. See Porter v. Bd. of Trs. of N.C. State Univ., 72 F.4th 573, 582–83 (4th Cir. 2023). Speech on "matter[s] of interest to the community" is of public concern, while "complaints over internal office affairs" are not. Crouse v. Town of Moncks Corner, 848 F.3d 576, 583 (4th Cir. 2017).

Plaintiff defines her allegedly protected speech as "rais[ing] the issue of inequitable salaries in the [EEOO] on several occasions," as well as "opposing favoritism," "opposing . . . disciplinary action" plaintiff saw as unwarranted, and "allowing employees to complain about . . .

16

mismanagement." (See Compl. ¶ 155). All but the first are clearly "complaints over internal office affairs." See Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 353 (4th Cir. 2000) (holding that "matters of internal policy, favoritism, and other employment-related matters" were not of public concern).

Raising salary issues presents a closer question. Complaints about discrimination can, but do not necessarily, address matters of public concern. See Campbell v. Galloway, 483 F.3d 258, 269 (4th Cir. 2007). The dividing line is whether the complaint, though about discrimination, can be characterized as individually based or addressed, rather than group or community-based. See Massaro v. Fairfax County, --- F.4th ---, 2024 WL 1162061, at *8–9 (4th Cir. 2024) (discussing this principle in detail). "[T]he focus is . . . upon whether the 'public' or the 'community' is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a 'private' matter between employer and employee." Id. at *8.

For example, in Cromer v. Brown, 88 F.3d 1315 (4th Cir. 1996), the Fourth Circuit held that a group letter protesting racial discrimination in a police department signed by "virtually all" black members of the force, and which expressed concern about the department's ability to protect the public, was on a matter of public concern. See id. at 1325–26. Cromer also distinguished those circumstances from "the expression of a single disgruntled employee," which would not have been protected. See id. at 1326. Similarly, in another case a complaint about racial discrimination by a single employee was not a matter of public concern, because the employee did not "seek to communicate to the public or to advance a political or social point of view," but rather to obtain only "improvement of his own situation." Brooks v. Arthur, 685 F.3d 367, 369–70, 374 (4th Cir. 2012).

17

Here plaintiff alleges merely that she complained about the denial of her request for a raise, on grounds that such denial was discriminatory. (See Compl. ¶¶ 45, 155). These statements are much closer to the individual complaints rejected in Arthur, than to the letter about group concerns about a police department's ability to function at issue in Cromer. They also align with the plaintiff's grievance in Massaro, which was a "qualm focused on [plaintiff's] perceived mistreatment," made in private, and thus not on a matter of public concern. See Massaro, --- F.4th ---, 2024 WL 1162061, at *8–9. The court therefore concludes that plaintiff's complaints, even about her salary, did not concern matters of public import, and therefore cannot support her First Amendment claim. Because plaintiff identifies no protected speech under her status as a government employee, her First Amendment claim fails and must be dismissed. See Porter, 72 F.4th at 582.

      iii.    Due Process

Plaintiff presents a reputational liberty interest claim under the Due Process clause. Defendants argue that plaintiff's allegations do not satisfy any element of this claim. (Defs' Br. (DE 17) 13–14). The court agrees that plaintiff has not pleaded this claim's publication element.

A constitutional liberty interest exists in one's reputation. Elhady v. Kable, 993 F.3d 208, 225 (4th Cir. 2021). To plead a due process claim based on injury to that interest, a litigant must show 1) a statement stigmatizing his good name; 2) damage to his standing in the community; 3) dissemination or publication of the statement; and 4) some governmental action altering or extinguishing one of his legal rights as a result. See id.

The third element requires the employer to have publicized the charges in some way. See, e.g., Bishop v. Wood, 426 U.S. 341, 348 (1976); Sciolino v. City of Newport News, Va., 480 F.3d 642, 649 (4th Cir. 2007); Hodge v. Jones, 31 F.3d 157, 165 (4th Cir. 1994); Echtenkamp v. Loudon
18

Cnty. Public Schs., 263 F. Supp. 2d 1043, 1056–57 (E.D. Va. 2003) (internal critiques and charges did not satisfy publication element); Young v. Annarino, 123 F. Supp. 2d 915, 925 (W.D.N.C. 2000) (same).

Plaintiff's briefing does not address the publication element at all, (see Pl's Br. 12–13), and her complaint contains no non-conclusory allegations that any of Smith's statements was ever made public. (See Compl. ¶¶ 142–51, 157, 190, 193). This claim therefore cannot survive the individual defendants' motion.

Because plaintiff's § 1983 claims all fail for the forgoing reasons, the court does not reach individual defendants' qualified immunity arguments.

## CONCLUSION

Based on the forgoing, state defendants' motion to dismiss (DE 14) is DENIED insofar as it seeks dismissal of plaintiff's retaliation claims resting on a theory of demotion and/or forced resignation as an adverse action. This motion is GRANTED in all other respects, including plaintiff's retaliation claims insofar as they rest upon creation of a hostile work environment as an adverse action, and these claims are dismissed for failure to state a claim under Rule 12(b)(6).

Individual defendants' motion to dismiss (DE 16) is GRANTED, and plaintiff's claims against defendants Smith, Pittman, Olive, and Boyette are dismissed for failure to state a claim under Rule 12(b)(6).

Stay imposed December 11, 2023, is now lifted. The court's initial order regarding planning and scheduling shall follow, including a deadline for the parties' provision of a joint report and plan to aid in the subsequent entry of the court's case management order.

SO ORDERED, this the 25th day of March, 2024.

_____
LOUISE W. FLANAGAN
United States District Judge